IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**REGINALD GIBSON,**

    Plaintiff,

    v.

**LT. KEVIN LUDWIG, et al.,**

    Defendants.

CASE NO. 3:22 CV 2082

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

*Pro se* Plaintiff Reginald Gibson filed this civil rights action under 42 U.S.C. § 1983 against Allen Oakwood Correctional Institution ("AOCI") Mailroom Supervisor Lt. Kevin Ludwig, AOCI Mailroom Employee John Doe, Ohio Department of Rehabilitation and Correction ("ODRC"), Assistant Chief Inspector Kelly Riehle, AOCI Institutional Inspector Allison Gibson, AOCI Institutional Inspector Sherri Schnipke, AOCI Assistant Warden Joanne Factor, AOCI Case Manager Kimberly Campbell, AOCI Unit Manager Fredrick Young, and AOCI Medical Staff John Doe. *See* Doc. 1. Plaintiff contends Defendants interfered with his ability to use his one free letter without restriction and refused to provide him with a copy of an unsigned Interstate Compact Agreement, which he claims caused him to be released to a halfway house rather than on his own terms. He asserts violations of his First, Eighth and Fourteenth Amendment rights. He seeks monetary damages.

Plaintiff also filed an Application to Proceed *In Forma Pauperis* (Doc. 4). That Application is granted. However, this action is dismissed pursuant to 28 U.S.C. § 1915(e).

**BACKGROUND**

Plaintiff's Complaint is divided into two parts. First, he objects to the mail policy at AOCI and claims some Defendants applied the ODRC policy in a more restrictive manner than the wording of the policy. *See* Doc. 1, at 4-15. He claims he has a constitutional right to have the policy implemented exactly as written. *See id.* Second, Plaintiff objects to actions some Defendants took prior to his release from prison. He claims they conspired to violate his civil rights by denying him a photocopy of the Interstate Compact Agreement to discuss with his attorney. *See id.* at 16-19. He claims that because he did not sign the Agreement, he was released to a halfway house rather than to his mother who resides in Illinois. *Id.* at 17-18.

Mail

Plaintiff asserts that on numerous occasions between January 2019 and November 2020 prison personnel refused to send his free inmate letter. Ohio Administrative Regulation 5120-9-18(B) provides: "(B) Postage and embossed envelopes shall be available for sale in the institution commissary. Inmates may send one letter each month at state expense." And ODRC Policy Number 75-MAL-01, VI (6)(D)(2) provides:

> Incarcerated individuals may send one (1) letter each month for which the ODRC will pay current first-class postage regular rates as established by the United States Postal Service (USPS) for a standard letter to maintain community ties. Any additional postage shall be paid by the individual.

Plaintiff alleges prison personnel at AOCI implemented this policy by providing each inmate with one free envelope on the first Sunday of the month and required it to be returned by the end of second shift. (Doc. 1, at 7). Later, he asserts he was informed that the envelope must be returned to the mailroom "no later than Friday morning following that Sunday" and envelopes would be considered contraband if subsequently found in the inmate's possession. *Id.* at 11. The mailroom would not otherwise accept free letters. *Id.* at 7. Plaintiff contends this is inappropriate,

as the wording of the policy does not place a time limitation on the use of the free envelope and the implementation contradicts the plain wording of the Ohio Administrative Code provision. *Id.* He claims he has a constitutional right to have the policy interpreted exactly as written without the additional conditions placed on it by AOCI personnel. *Id.* at 12.

On January 14, 2019, Plaintiff attempted to send two letters, both of which he asserts were his "FREE STATE monthly letter". *Id.* at 8. January 6 was the first Sunday of the month. One letter was addressed to the Court of Claims in Columbus and another to the Ohio Attorney General. *Id.* The mailroom returned the first letter, stating he owed $ 0.21 for postage; the second letter was returned to him the following day. *Id.*

Plaintiff attempted to send four letters on February 3, 2019, the first Sunday of the month, each of which he asserts was his free monthly letter. *Id.* at 9. These letters were addressed to the Ohio Attorney General, the Clerk of Courts for the Ohio Court of Claims, the Legal Services Department of the Lake Erie Correctional Institution, and the Legal Services Department of Ashtabula Medical Center. *Id.* The first three letters were returned to him for insufficient funds / additional postage; the fourth was returned to him with a reiteration of the policy for use of the free envelope and stating that it would be considered contraband if found in his possession past the date on which it was required to be turned in. *Id.* at 9-10. The mailroom instructed Plaintiff to purchase a stamp from the commissary for $ 0.55. *Id.* at 10.

On June 1, 2019, Plaintiff attempted to use his free letter to send mail addressed to the Clerk of Court for the Court of Claims. *Id.* at 10. The first Sunday in June 2019 was June 2. Mailroom personnel refused to mail it without postage. *Id.*

Plaintiff attempted to mail a letter to his mother on August 23, 2019, and claimed it was his free state envelope. *Id.* August 4, 2019, was the first Sunday of the month. Mailroom

personnel returned the letter and restated the policy and that the envelope was contraband if found in his possession after the time limits for its use expired. *Id.* at 10-11. The mailroom informed Plaintiff that the next free letters would not go out until September 3, 2019, and suggested he wait until that date to resend his letter. *Id.*

Plaintiff indicates he made similar attempts to send free letters on February 15, 2020, June 1, 2020, and June 17, 2020. *See id.* at 10-11. The first Sunday in February 2020 was February 2. The first Sunday in June 2020 was June 7. Each time, Plaintiff was told he had missed the deadline and instructed to buy postage. *Id.* Plaintiff contends the AOCI policy directly conflicts with the ODRC policy and infringes on his First Amendment rights to send and receive mail.

Interstate Compact Agreement

In his next category of claims, Plaintiff contends he notified his Case Manager, Defendant Campbell, in May 2020 that he was scheduled to be released from prison on January 1, 2021, and planned to reside with his mother in Illinois. *Id.* at 16. He says Campbell told him no Interstate Compact Agreement Packet was required because he was not being released on parole or post release control. *Id.* He states that on November 12, 2020, Campbell summoned Plaintiff to her office to discuss details of an Interstate Compact Agreement. *Id.* She presented him with the document to sign but he indicated he wanted a copy of it for his attorney to review. *Id.* He contends Campbell refused to give him a copy of the Agreement and he refused to sign it without reviewing it with his attorney. *Id.* at 17.

Plaintiff states he filed a grievance to Campbell's supervisor, Frederick Young. *Id.* Young replied to the grievance stating he did not like Plaintiff's tone and would get to the grievance when he had time. *Id.* Plaintiff escalated the grievance to Institutional Inspector

Schnipke on November 13, 2020; Schnipke responded that the issue was non-grievable. *Id.* Plaintiff filed a second grievance with Schnipke on November 23, 2020, regarding the refusal to provide a copy of the Interstate Compact Agreement. *Id.* On December 2, 2020, another Institutional Inspector, Allison Gibson, responded to the grievance stating Plaintiff would receive a copy of the Agreement, but Plaintiff denies that he ever received such a copy. *Id.* There is no indication that he ever received or signed the Agreement. *See id.*

Plaintiff expected to be fully released from prison on January 1, 2021, to live with his mother in Illinois. *Id.* at 17-18. Instead, Plaintiff claims he was released to a halfway house in Canton, Ohio. *Id.* at 18. Plaintiff purchased a Greyhound Bus ticket on January 13, 2021, and left for Chicago. *Id.* He contends this made him a Violator at Large; however, there is no indication the State of Ohio actually declared him to be a Violator at Large or made any effort to charge him or bring him back. *See State of Ohio v. Gibson*, No. 2013 CR 0120 (Stark Cnty. Ct. Comm. Pl.); *see also* ODRC Parole Violators at Large, https://appgateway.drc.ohio.gov/OffenderSearch/Search/PvalListing.[1] In fact, the docket in his criminal case notes his change of address on March 15, 2021, and lists his address in Illinois. *Gibson*, No. 2013 CR 0120. He indicates he obtained employment at a carwash in Chicago but became increasingly worried he would be arrested for leaving Ohio. (Doc. 1, at 17). He claims this caused him to experience anxiety and depression. *Id.* at 17-18.

Finally, Plaintiff alleges he was released from prison without his prescription for Imitrex. *Id.* at 17. He was taken by ambulance to the emergency room two or three days after his release

---

1. The Court may take judicial notice of matters of public record. *Cf. Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) ("[A] court ruling on a motion to dismiss '*may* consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.' " (emphasis in original) (citation omitted)); *Smitley v. Eppinger*, 2018 WL 9618503, *1 n. 2 (N.D. Ohio) ("Federal Courts may take judicial notice of public records, such as dockets and proceedings in other courts.").

due to a migraine headache. *Id.* at 18. He does not indicate if he was hospitalized or treated and released.

Plaintiff asserts Defendants' actions violated his First, Eighth, and Fourteenth Amendment rights. He further asserts Defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985.

### STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not

meet this pleading standard. *Id*. In reviewing a complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## DISCUSSION

Claims Relating to Mail

Plaintiff first claims the restrictions placed on his free monthly letter violated his First Amendment rights. This assertion lacks an arguable basis in law. Inmates have no constitutional right to free postage for nonlegal mail. *See Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003); *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (citing *Hershberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994)).

Even with respect to legal mail, the right to free postage is not unlimited. *Bond v. Dunn*, 1989 WL 149988, at *1 (6th Cir.) (citation omitted) ("[P]risoners do not have an unlimited right to free postage in connection with their right of access to the courts."). The relevant inquiry is whether the inmate was denied meaningful access to the courts. To establish a violation of that right, the prisoner must demonstrate an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). The injury requirement must relate to the rejection of a non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis*, 518 U.S. at 354; *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("the right [to access the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."). The plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *see also Christopher*, 536 U.S. at 415 ("It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint[.]").

Plaintiff claims to have attempted to send letters to the Court of Claims, the Ohio Attorney General, the Lake Erie Correctional Institution, the Ashtabula Medical Center, another inmate, and his mother. Of these, only his letters to the Court of Claims could potentially be considered legal mail. Plaintiff has not alleged facts to suggest he was indigent and could not afford postage, or that the prison's refusal to mail the letters without sufficient postage caused actual prejudice to a pending or contemplated direct appeal, habeas corpus petition, or civil rights action. He therefore fails to state a claim pertaining to the prison's mail policy.

Claims Relating To Release

The second part of Plaintiff's Complaint asserts various claims related to his release from prison. This Court dismisses all such claims.

*Claims Regarding Interstate Compact Agreement*

First, Plaintiff asserts he was denied a copy of the Interstate Compact Agreement to review with an attorney. He refused to sign it. He states he was released on a temporary basis to a halfway house rather than released on his own terms. This claim can be further broken into two parts: (1) the refusal to provide Plaintiff with a photocopy of the Interstate Compact Agreement and (2) the decision to release him to a halfway house.

*Photocopy of Agreement*

Plaintiff first claims Campbell refused to give him a copy of the Interstate Compact Agreement to review with an attorney prior to him signing the document. He claims this violated his First, Eighth and Fourteenth Amendment rights. Plaintiff does not clarify which First Amendment right is implicated by this action and none is apparent on the face of the Complaint.

Plaintiff's Eighth and Fourteenth Amendment substantive due process claims are duplicative. Where a specific constitutional amendment "provides an explicit textual source of

8

constitutional protection" against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Campbell did not jeopardize Plaintiff's health or safety by denying him a copy of the form. This does not rise to the level of an Eighth Amendment claim.

Plaintiff further claims this action denied him procedural due process. The first hurdle in asserting a claim for denial of procedural due process is to establish a protected property interest. *Howard v. Grinage*, 82 F.3d 1343, 1349-53 (6th Cir. 1996). There is no suggestion Plaintiff had a constitutionally protected property interest in obtaining a copy of the unsigned form.

Plaintiff additionally claims Defendants Young, Schnipke, and Gibson failed to properly respond to his grievances to correct the denial of the copy of the form. Even if Plaintiff had demonstrated a protected property interest in obtaining a copy of the unsigned form, he could not maintain a cause of action against these Defendants. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999).

### *Release to Halfway House*

Plaintiff contends he was placed in a halfway house when he should have been released on his terms. He does not indicate who made this decision.

A defendant may not be "held liable for the conduct of another" under § 1983. *Apsey v. Chester Twp.*, 608 F. App'x 335, 339 (6th Cir. 2015) (citation omitted).

Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (§ 1983 plaintiff must allege "violation was committed *personally* by the defendant") (emphasis in original); *Mullins v. Hainesworth*, 1995 WL 559381 (6th Cir.).

The Complaint contains no indication any named Defendant was personally responsible for making that decision to release Plaintiff to a halfway house. As such, it fails to state a claim in this regard.

*Migraine Medication*

Plaintiff next asserts he was released without his medication for migraine headaches in violation of the Eighth Amendment, which amounts to a claim of deliberate indifference.

An Eighth Amendment deliberate indifference claim has objective and subjective components. *See, e.g.*, *Farmer*, 511 U.S. at 834. The "objective component" addresses the conditions leading to the alleged violation: it "requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Constitution." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citation and brackets omitted). The "subjective" component, meanwhile, addresses the officials' state of mind and requires a plaintiff to show that a defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff has not alleged a plausible Eighth Amendment claim for denial of medical care. He was not incarcerated at AOCI at the time he required the medication and sought treatment at his local hospital. As such, this claim must be dismissed.

<u>Conspiracy Claim</u>

Finally, Plaintiff's claim under 42 U.S.C. § 1985 must also be dismissed. To establish a violation of § 1985, Plaintiff must allege Defendants conspired together for the purpose of depriving him of the equal protection of the laws and committed an act in furtherance of a conspiracy motivated by racial or other class-based discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Plaintiff alleges no facts to suggest any Defendants conspired together to deprive him of his right to equal protection under the law or that their actions were in any way motivated by his race or membership in a protected class.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that this action is dismissed pursuant to 28 U.S.C. § 1915(e); and Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

    s/ *James R. Knepp II*
    UNITED STATES DISTRICT JUDGE